LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GUADALUPE CORTES, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class*,

                  Plaintiff,

        -against-

CARABEAN, LLC
        d/b/a DOWNTOWN GALWAY HOOKER,
FIDDLESTICKS L.L.C.
        d/b/a FIDDLESTICKS,
and MARY NIAMH CONWAY,

                Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, GUADALUPE CORTES ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, CARABEAN, LLC d/b/a DOWNTOWN GALWAY HOOKER and FIDDLESTICKS L.L.C. d/b/a FIDDLESTICKS ("Corporate Defendants"), and MARY NIAMH CONWAY ("Individual Defendant," and collectively with Corporate Defendants, "Defendants") and states as follows:

1

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid wages, including overtime, due to an invalid tip credit, (3) unpaid gratuities due to invalid tip pooling, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving, (2) unpaid minimum wage, including overtime, due to an invalid tip credit, (3) unpaid gratuities due to invalid tip pooling, (4) unpaid spread of hours premiums, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to New York Executive Law § 296 ("NYSHRL"), and New York City Administrative Code § 8-107 ("NYCHRL"), that she is entitled to recover from Defendants for creating and fostering a hostile work environment through persistent sexual harassment from former manager Alex Kaplan and unwarranted aggressive behavior from manager Kiara Flannigan towards Plaintiff, and she is entitled to recover: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs. Plaintiff additionally seeks damages and other relief under the common law of the State of New York for intentionally inflicting emotional distress.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.    Plaintiff GUADALUPE CORTES is a resident of Queens County.

7.    Defendants own and operate two (2) Irish pubs in New York City, as follows:

(a)  Downtown Galway Hooker, 133 7th Ave S, New York, NY 10014 ("Galway Hooker Bar"); and

(b)  Fiddlesticks: 56 Greenwich Ave, New York, NY 10011 ("Fiddlesticks") (collectively, the "Pubs").

8.    Defendants operate Galway Hooker Bar and Fiddlesticks as a single integrated enterprise. Specifically, the Galway Hooker Bar and Fiddlesticks are engaged in related activities, share common ownership and have a common business purpose.

(i)    Galway Hooker Bar and Fiddlesticks are engaged in the same business of operating Irish pubs in New York City.

(ii)    Galway Hooker Bar and Fiddlesticks are commonly owned by Individual Defendant. *See* **Exhibit A**.

(iii)    Galway Hooker Bar and Fiddlesticks are commonly operated by Individual Defendant. *See* **Exhibit B** for Individual Defendants' LinkedIn page, identifying herself as "President" at both pubs. *See* also **Exhibit C**, an article introducing Individual Defendant as the founder of Fiddlesticks and "the President of Galway Hooker Pub as well as Fiddlesticks".

(iv)    Employees are interchangeable between the two locations. Throughout Plaintiff's employment with Defendants, employees were often transferred to work at the other location, as needed. Managers are also interchangeable and

manage both locations as needed.

(v)    Galway Hooker Bar and Fiddlesticks implement the same wage and hour policies and procedures established by Defendants.

9.    Corporate Defendant CARABEAN, LLC d/b/a DOWNTOWN GALWAY HOOKER is a domestic business corporation organized under the laws of the State of New York, with its principal place of business at 133 7th Ave S, New York, NY 10014 and the service of process address located at 54 Greenwich Ave, Apt 1, New York, NY 10011.

10.    Corporate Defendant FIDDLESTICKS L.L.C. d/b/a FIDDLESTICKS is a domestic business corporation organized under the laws of the State of New York, with its principal place of business at 56 Greenwich Ave, New York, NY 10011 and the service of process address located at 54-58 Greenwich Ave, New York, NY, 10011.

11.    Individual Defendant MARY NIAMH CONWAY is a principal and owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant MARY NIAMH CONWAY exercises the power to (and also delegate to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to MARY NIAMH CONWAY regarding any of the terms of their employment, and MARY NIAMH CONWAY would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant MARY NIAMH CONWAY has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. MARY NIAMH

CONWAY has the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

12.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and the Regulations thereunder.

13.     At all relevant times, Defendants were and continue to be an employer within the meaning of the New York State Human Rights Law, the New York City Human Rights Law, and the regulations thereunder.

14.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to cooks, line cooks, food preparers, dishwashers, hosts/hostesses, porters, expeditors, servers, runners, bussers, bartenders and barbacks) employees employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay them proper wages, including overtime, due to time shaving and proper gratuities due to invalid tip pooling. Plaintiff's claim stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### RULE 23 CLASS ALLEGATIONS

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all front of house tipped employees (including but not limited to cooks, line cooks, food preparers, dishwashers, hosts/hostesses, porters, expeditors, servers, runners, bussers, bartenders and barbacks) employed by Defendants throughout the United States on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no

doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

21.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants of failing to pay proper wages, including overtime, due an time shaving, failing to pay spread of hours premiums in compliance with the requirements of the New York Labor Law, under the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

22.    With regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under NYLL. Plaintiff and the Tipped Subclass similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to

accurately keep track of daily tips earned and maintain records thereof. Plaintiff and the Tipped Subclass also suffered from Defendants' failure to pay them proper gratuities due to Defendants' invalid tip pool.

23.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class

members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including the following:

a.  Whether Defendants employed Plaintiff and Class members within the meaning of the New York Labor Law;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.  Whether Defendants properly notified Plaintiffs and Class members of their hourly rates;

e.  Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

f.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

g.  Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

h.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

i.  Whether Defendants paid Plaintiff and Class members the New York State spread of hours premium when their workdays exceeded ten (10) hours;

j.  Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

k.  Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## **STATEMENT OF FACTS**

### **Wage and Hour Claims**

27.  In or about July 2020, Plaintiff GUADALUPE CORTES was hired by Defendants to work as a server at Galway Hooker Bar, located at 133 7th Ave S, New York, NY 10014. Plaintiff's employment ended in or around January 2023.

28.  Although Plaintiff only worked at Defendants' Galway Hooker Bar location, based on her experience and observation, other employees were often transferred to work at Defendants' Fiddlesticks, located at 56 Greenwich Ave, New York, NY 10011, as needed.

Managers are also interchangeable and manage both locations as needed. Employees who worked at both locations informed Plaintiff that the wage policies are identical among the two locations.

29.    At all relevant times, Plaintiff was scheduled to work with a varying schedule, from 3:00 p.m. to 10:00 p.m., or 7:00 p.m. to 2:00 a.m. the following day. Plaintiff was required to work long shifts during holidays and sports game days. Additionally, at all relevant times, Plaintiff was required to come in one (1) hour prior to her scheduled shifts performing non-tipped activities.

30.    At all relevant times, Plaintiff was frequently working more than ten (10) hours per shift but never received spread of hours premiums for these shifts.

31.    During the first year of her employment, Plaintiff was scheduled to work five (5) to six (6) days per week, for up to fifty-seven (57) hours per week on average. After the first year of her employment, Plaintiff was scheduled to work four (4) days per week, from Wednesday to Saturday, totaling thirty-two (32) to forty-four (44) hours per week. In addition to these scheduled hours, Plaintiff would also be required to fill in for other employees outside of her scheduled shifts, for additional one or two days per month.

32.    At all relevant times, Plaintiff was compensated at a tip credit minimum wage of $10/hour under NYLL. However, one (1) hour prior to her scheduled shifts and throughout her shifts, Plaintiff was required to perform non-tipped activities, including but not limited to, doing roll ups, refilling stations and ice buckets, cutting lemons, moving tables, cleaning and polishing silver, and counting money at the end of the shift. Tipped Subclass Members would similarly be required to perform non-tipped activities in excess of two (2) hours per shift.

33.    At all relevant times, Plaintiff and other servers would count all their tips every

day. Based on Plaintiff's and other servers' observations, the tip amounts they received would never add up. When Plaintiff complained to the manager, Kiara Flannigan, about the incorrect tip amounts, the manager replied, "I can give tips to whoever I want." Based on Plaintiff's personal observations and conversations with co-workers, other tipped employees also did not receive the right amounts of tips. Plaintiff and the Tipped Subclass did not have access to the tip pool records.

34.    Plaintiff and the Tipped Subclass were paid below the minimum wage at an invalid tip credit minimum wage. With respect to Plaintiff and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the NYLL because Defendants failed to accurately keep track of daily tips and maintain records thereof, implemented an invalid tip pooling scheme in which managers participated in the tip pool, and claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek.

35.    At all relevant times, Plaintiff was not required to clock in or out. Instead, Plaintiff was asked to write down her time on a time sheet. However, all hours worked by Plaintiff were rounded to the nearest half hour. FLSA Collective Plaintiffs and Class members were similarly shorted on time daily.

36.    In or around October 2022, after Kiara Flannigan was promoted to manager, she randomly deducted hours from Plaintiff's check almost every day. At all relevant times, Plaintiff was time shaved approximately two (2) hours per shift. Thus, during all times of Plaintiff's employment, Defendants consistently failed to properly compensate Plaintiff for all hours worked.

37.    Beginning in or around October 2022, Manager Kiara Flannigan would

frequently send Plaintiff home one or two hours into her shifts, approximately one or two times a week. Plaintiff would not be paid for her work that day, despite that the NYLL required Defendants to pay her for at least four (4) hours at the minimum wage on any day on which she was called in to work, regardless of when she was sent home. Based on her personal observations and conversations, Class Members would similarly be sent home occasionally from their scheduled shifts and not be provided their call-in pay premiums.

38.     As a result of Defendants' wrongful policy of time shaving and rounding, Plaintiff was not properly compensated for all of her wages, including overtime premiums for all hours worked over forty (40). FLSA Collective Plaintiffs and Class members were similarly not properly compensated for their wages earned, including overtime premiums for all hours worked over forty (40).

39.     At all relevant times, Defendants provided deficient wage statements to Plaintiff which failed to accurately show the number of hours she worked in a given workweek. Class Members received similar fraudulent wage statements due to Defendants' policy of time-rounding.

40.     Defendants did not provide Plaintiff with proper wage statements at all relevant times. Similarly, Class Members did not receive proper wage statements, in violation of the NYLL.

41.     Defendant never provided Plaintiff with a proper wage notice as required by the NYLL. Similarly, Class Members were never provided with proper wage notices.

42.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices

trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

43.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants' failure to provide wage notices allowed Defendant to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to

Plaintiff and Class members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class members similarly struggle to timely pay debts due to Defendants continued attempts to hide wrongdoing from employees.

45.    Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action.

**Discrimination Claims**:

46.    Throughout her employment with Defendants, Plaintiff's supervisors created a hostile work environment in the form of regular and sexual harassment directed at Plaintiff.

47.    Throughout her employment with Defendants, Plaintiff's direct supervisor, Alex Kaplan, repeatedly sexually harassed Plaintiff. Alex Kaplan would frequently attempt to massage Plaintiff's lower back, despite her rejections. Plaintiff witnessed other female employees getting harassed by Alex Kaplan. Alex Kaplan would then give better schedules and longer hours to the female employees that tolerated his harassment. Plaintiff, however, always got the worse schedules or shifts with less hours from Alex Kaplan, only for the reason that she would not tolerate Alex Kaplan's sexual harassment.

48.    During one of Plaintiff's shifts, Alex Kaplan stated to Plaintiff that "I love to see our client's asses and boobs. I love women like that."

49.    Following Alex Kaplan's termination, Defendants promoted Kiara Flannigan as the new manager. Plaintiff's hostile work environment did not change with the change in management. Manager Kiara Flannigan regularly screamed at Plaintiff, reduced Plaintiff's hours, and regularly threatened Plaintiff's employment. In addition, Kiara Flannigan regularly falsely accused Plaintiff of being intoxicated at work, even though Plaintiff never drinks

alcohol. Manager Kiara Flannigan would regularly deduct two hours from Plaintiff's paychecks every week, for alleged lack of productivity, and say "I deducted 2 hours from your pay because other servers told me you did not do anything during that time".

50.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

51.    Plaintiff realleges and reavers by reference all allegations in all the preceding of this Class and Collective Action Complaint as if fully set forth herein.

52.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

53.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

54.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.00.

55.    At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs proper wages for all hours worked, including overtime hours for hours worked over forty (40).

56.    Defendants failed to pay Plaintiff and FLSA Collective Plaintiffs proper wages

for all hours worked, including overtime hours, due to an invalid tip credit.

57.      Defendants also illegally retained gratuities from Plaintiff and FLSA Collective Plaintiffs by having an invalid tip pool.

58.      Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

59.      Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked when Defendants knew or should have known such was due.

60.      Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

61.      As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62.      Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to time-rounding and an equal amount as liquidated damages.

63.      Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

64.    Plaintiff CORTES, realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

65.    At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

66.    Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class members the prevailing minimum wage due to invalid tip credit.

67.    Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class members all tips they earned due to an invalid tip pooling scheme.

68.    Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them wages for all hours worked due to Defendants' policy of time shaving.

69.    Plaintiff and Class members regularly worked days that exceeded ten (10) hours per day. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay spread of hours premiums for each day their workday exceeded 10 hours.

70.    Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages due to an invalid time shaving policy, unpaid wages due to compensation at an invalid tip credit, unpaid gratuities due to an invalid tip pooling scheme, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements.

## COUNT III

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

71.      Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if full set forth herein.

72.      At all relevant times, Plaintiff CORTES was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYSHRL.

73.      At all relevant times, CARABEAN, LLC, d/b/a DOWNTOWN GALWAY HOOKER and FIDDLESTICKS L.L.C. d/b/a FIDDLESTICKS were and continue to be employers within the meaning of the NYSHRL.

74.      Section 296(1)(a) of the NYSHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

75.      Section 296(6) of the NYSHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

76.      Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article.

77.      Defendants violated the NYSHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

78.      This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff, FLSA Collective Plaintiffs and Class members.

79.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, FLSA Collective Plaintiff and Class members.

80.    As a result of Defendants' unlawful employment practices, Plaintiff CORTES sustained injuries, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

81.    Due to Defendants' violations under the New York Human Rights Law, as amended, based on discrimination on the basis of sex, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

82.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if full set forth herein.

83.    At all relevant times, Plaintiff CORTES was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

84.    At all relevant times, CARABEAN, LLC, d/b/a DOWNTOWN GALWAY HOOKER and FIDDLESTICKS L.L.C. d/b/a FIDDLESTICKS were and continue to be employers within the meaning of the NYCHRL.

85.    Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

86.    Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory

practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

87.    Section 8-107(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this chapter.

88.    Defendants violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

89.    This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff, FLSA Collective Plaintiffs and Class members.

90.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, FLSA Collective Plaintiff and Class members.

91.    As a result of Defendants' unlawful employment practices, Plaintiff CORTES sustained injuries, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

92.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and the NYCHRL;

b. A declaratory judgment that the practices complained of herein are unlawful under the NYLL and FLSA;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d. An award of unpaid wages including overtime due under the FLSA and NYLL due to Defendants' policy of time shaving;

e. An award of unpaid minimum wages under the FLSA and NYLL due to invalid tip credit;

f. An award of unpaid gratuities due to invalid tip pooling scheme under FLSA and NYLL;

g. An award of unpaid spread of hours premiums, due under the NYLL;

h. An award of liquidated damages as a result of Defendants' willful violations of the NYLL;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful violations of all State labor laws;

j. An award of statutory penalties as a result of Defendants' failure to comply with the

NYLL wage notice and wage statement requirements;

k.   An award of compensatory damages for Plaintiff and Class Members physical and emotional suffering as a result of Defendants' unlawful sexual harassment, pursuant to the NYSHRL and NYCHRL;

l.   An award of back and front pay, compensatory damages, and punitive damages due under the NYCHRL and the NYSHRL;

m.   An award of back and front pay, compensatory damages, and punitive damages for Defendants' unlawful retaliation under the FLSA and NYLL;

n.   An award of prejudgment and post judgment interest, and costs and expenses of this action together with reasonable attorneys' and expert fees;

o.   Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

p.   Designation of this action as a Class Action pursuant to F.R.C.P. 23;

q.   Designation of Plaintiff as a Representative of the Class; and

r.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and others similarly situated, demands a trial by jury on all issues so triable as of right by jury.

Dated: New York, New York
       July 10, 2023

                              Respectfully submitted,

                              LEE LITIGATION GROUP, PLLC
                              C.K. Lee (CL 4086)
                              Anne Seelig (AS 3976)
                              148 West 24th Street, 8th Floor
                              New York, NY 10011
                              Tel.: 212-465-1188
                              Fax: 212-465-1181
                              *Attorneys for Plaintiff, FLSA Collective*
                              *Plaintiffs, and the Class*

                       By: */s/ C.K. Lee*
                              C.K. Lee (CL 4086)